We'll now turn to 24-2174, Springer v. Seventh Judicial District Court, Mr. Dunn. May it please the Court.  I'm humbled by the opportunity, or rather the honor and the privilege, of discussing a First Amendment case in light of the events yesterday in Oregon. I mean in Utah, I'm sorry. I think about the gravity of that, and I think about the avenues that Mr. Springer was left with as a way of framing this argument for the Court. When we're discussing, of course, absolute unity for the judiciary, I want to first acknowledge the very real inherent authority and needed authority of the Court to maintain decorum, and to maintain order, and to maintain the efficiencies going on before the Court. That's, of course, there. And the ability of the Court to address anything that interferes with those through contempt powers. I think that those are things that are important to note. I think what's different about this case, and I would immediately go to, is that Mr. Springer didn't, at least in the later stages of this when the administrative orders were coming out, when he was being kicked out of proceedings as a member of the press from a virtual proceeding and then was barred from a proceeding in front of Judge Murdoch, wasn't engaged in disruptive behavior inside of a courtroom at that point. And I think that's an important distinction that we point to, and of course in light of Cohen, as really indicative of where this case is. There's no doubt, and I'll acknowledge that Mr. Springer's rhetoric outside of the courtroom in a social media medium is caustic. He uses language that I'm quite certain would inflame the absolute average person. And I'd like to note something that is not really part of the record, but I think bears mentioning. We've harped on the idea that if the Court really needed to address his lack of decorum, his lack of not interfering with the process, that would have been squarely within the Court's contempt powers, even outside of the courtroom. And there was a contempt proceeding initiated. This doesn't show in the record because it never became involved in this case in the course of the proceedings, but that ultimately was sent to the New Mexico Office of the District Attorney for prosecution for contempt, and it was in front of a judge in the 13th Judicial District, away from the 7th Judicial District. And ultimately it was dismissed by the prosecution, no longer sticky, for lack of evidence. And I just want to emphasize that. If the Court really needed to get a hold of Mr. Springer, the Court had the ability and the inherent authority to do that. And did look at doing that. But what you have instead are these administrative orders and these actions by the judiciary to just boot him from the proceedings. And at that point, that's why I think this is important, because the only avenue of appeal, looking at the pre-deprivation and post-deprivation taking away of his rights, the only avenue he had appeal to, to appeal the actions of the District Court and the folks that we've named here, is this Court. It's ultimately this case, rather. Your Honor. So you're addressing merits, but you've got some real procedural problems here, don't you? I think that there are. It seems to me probably keep us from addressing the merits of your claim, whether there was a First Amendment violation. Your Honor, I think you're wanting to discuss the judicial immunity. Well, judicial immunity, the nature of the suit, being against their individual capacities as opposed to official capacities, there are a variety of things here. And I think they're the basis of the Federal District Court's decision. The Federal District Court didn't rule on the First Amendment issue, did it? No, Your Honor, that's correct. It's got judicial immunity. If you can overcome the procedural stuff, then maybe we could send it back for the merits. But I think you've got a tough row to hoe to get to that point. We had a very narrow row to hoe, Your Honor, is the way I would countenance that. But I think that there is the opening in that row to hoe under the Supreme Court of Virginia case. And the Court's discussion in that case of addressing perspective, declaratory, and injunctive relief, which is what we've pled for, and we very carefully pled for in this case. And that gets us to this discussion from there of the Judicial Act versus the Administrative Act and the Morales v. Waco and Stump v. Sparkman and some of those other cases. But I think that the Supreme Court of Virginia case gives us that ability to look at not just the court, because the Supreme Court noted both the court and the named justices in that case and said that when we quoted this in our brief, that there is that opportunity for declaratory relief and injunctive relief, because this harm was ongoing for Mr. Springer. Those administrative orders and his barring from proceedings continued on. It still continues to this day. Those orders have never been rescinded. He doesn't have any relief other than this case. And I think that's entirely what that Supreme Court of Virginia case sets up, is that in these situations where there is this kind of ongoing harm that will go on forever, of course we need to be able to evaluate whether or not it does trample upon some sort of constitutional liberty to allow that to continue on using administrative or enforcement authority, which is what they talked about in the Supreme Court of Virginia. Does that answer your question, Your Honor? Well, I think you're focusing more on judicial immunity than the restrictions in 1983 on equitable relief, declaratory and injunctive relief, and the question of in what capacity the defendants were sued. But I wanted you to focus on those matters, and we'll see what the appellees have to argue on that point. But I'm not sure that the merits are something we should be addressing at this stage of the proceeding when the district court has never addressed the merits. Your Honor, we did plead against the court in its official capacity, I think is part of what you're getting to. We pled against the judges, the court administrator, and the court clerk individually acting under the color of law under 1983. So procedurally, we did name them, and that's what I was showing. And can you get injunctive or declaratory relief against the individuals? You can't, can you? And that's all you pled. I understand that that's the point. So I don't understand where you're going here. In hindsight, Your Honor, I do understand that we probably should have pled the 1983 against the court, the 7th Judicial District, rather than against the individuals. But we were very cognizant to try to stay away from pleading a Section 1983 claim not for damages. That's what we were focused on, to make sure that we didn't run afoul of the Collins case or some of these other cases that I'm familiar with. So you really don't have a claim left against the individuals, and you chose not to amend your complaint. You were offered an opportunity to amend, at least to add Judge Murphy in her official capacity. You did not do that. I'm just trying to figure out what's left here. Well, I'm not sure that I totally agree that we can't, and that's the point of the Supreme Court of Virginia case, and specifically the citation that we gave to that and the quote that we gave of that discusses claims against both the court, the Supreme Court of Virginia, and the justices, and specifically the Chief Justice, that they were acting in an enforcement capacity to do that. So it seems to me that, and I understand the court's concern or disagreement with this point, but it seems to me that the Supreme Court of Virginia case sets up that you can have a claim against the justices for injunct, or in this case the judges and the court staff, for injunctive relief. For instance— In their official capacity. In their official capacity. Right. But that's not how you plead. You didn't plead. We were trying. I don't know exactly how to get around that, but to say that— But weren't you— For instance— I thought you were specifically given an opportunity to make your claim against the defendants in their official capacities. And, Your Honor, we did decline to exercise that, because at this point we also had this absolute— I think an individual capacity injunction against her is what I'm trying to say that we still had at that point. When she's acting as a judicial officer, don't you treat her as simply an arm of a judge, an arm of the judiciary, and the same rules apply? I don't know that I agree with that in this capacity. Certainly she's a clerk of the court, but that's saying— For instance, an example that would be the dispatcher at a police station is not a law enforcement officer. And the distinction in her role and the court administrator's role, yes, they are involved in a judicial setting. Well, what did she allegedly do wrong? She denied Mr. Springer's services that he was entitled to under state law as a retaliation for his exercise of speech and press on social media. Was that not at the direction of the judges? No, that's not clear. Not at all. She had some direction about how she could handle that, but she took actions, maybe ratified later by the district court, to just shut down the office, to deny him that, and to call— We don't have any evidence that the judges directed her to call law enforcement. That's not in the record. So we can't assume that she was acting at the direction of the chief judge to go out and call the state police, for instance, or the county sheriff to come down saying that, incorrectly and falsely, that Mr. Springer was armed, putting his life in jeopardy, as we discussed, and exposing him to an encounter with law enforcement, and causing him to be excluded from the courthouse again. But you weren't seeking damages against her? No. You were just seeking a declaratory relief, an injunctive relief. Right. So what were you seeking to enjoin her from that wouldn't be her actions as an arm of the judiciary? To decline her responsibilities under state law to provide records under IPRA. We specifically wanted an injunction that she was not allowed to interfere any further with Mr. Springer's investigative efforts as a journalist to obtain records from the court, which is exactly what she was doing. We wanted her to be enjoined because we had other clerks that were not behaving as she did. So we have examples of Mr. Springer. They're on the videos. And you don't think that that needs to be treated as relief against her in her official capacity as opposed to personal capacity? I'm not sure that the distinction merits the dismissal that we received, and that's what we were getting at, is that these actions should have been released. I mean, by merits, maybe not on the merits, but the procedural precedent, as argued by the appellees, requires that that claim for injunctive declaratory relief be made against a defendant in the defendant's official capacity. And I think the court would—I would point the court to the order from the district court that we decided not to amend under. She didn't invite the amending of the claims against everybody else. The only claim that I recollect that she invited was one against Judge Murphy. So she's wiping out those other claims against those other individuals. That was another reason we didn't think that there was—she only said that she would allow amendment as to Judge Murphy. And is that because they were futile? They would have been futile in their official capacity because of the immunity? Maybe. I could speculate that that's why the court did that. But the problem with that is still that you have, for instance, Susan Rossignol and the court administrator. You have these other claims. Why wouldn't we be allowed—those wouldn't be futile if we brought them in their official capacity. I think the court could agree with me on that point based upon the call we just had. So why couldn't we have been able to amend to bring those claims against them? Still, there's no finding of futility other than there's this judicial—which is why I led with the argument about judicial capacity. But you still have that, right? You'd still have those claims against those folks, and I don't—and then you would have to do the analysis of whether they got quasi-judicial immunity. And then we get from there—and just very briefly because I only have a little bit of time left—we get to the 11th Amendment immunity argument. And I have real trouble with that. It feels to me as though—especially after the colloquy I just heard in the other case—at a minimum, there was supplemental jurisdiction that upon the dismissal of federal claims should have warranted dismissal without prejudice of those claims. But the court went further, as if to seal those off and to make it so that we couldn't go forward to state court by granting 11th Amendment immunity. The 11th Amendment immunity, the only preclusive effect that would have is precluding you from bringing this claim again in federal court. When the decision is to dismiss claims because of 11th Amendment immunity, that does not preclude you from proceeding on the same claims in state court. Yes, but it's— Maybe you're precluded on other grounds. But it's completely unnecessary, and it colors where we go from there. We didn't want that to be the last word on that. Why the district court weighed in and said there wasn't— It would be the last word on what the 11th Amendment means, and that's the sort of thing the federal court can decide. It's not a matter of state law. It is, but I think the federal court decided that incorrectly, which is why we're here. I think the state has clearly waived sovereign immunity and 11th Amendment immunity. That's before our court, for sure. No, that's my point is that the state statute, specifically under the Civil Rights Act, waived sovereign immunity, so the court is just wrong on the 11th Amendment argument, and that's why we're here to address that. Let me ask you, the state statute doesn't specifically say that this immunity that's waived can allow suits in federal court. It's not enough that the state has waived sovereign immunity with respect to claims against it. It also has to say, we don't mind your bringing those claims in federal court, and the Supreme Court has said that's got to be crystal clear in the state statute, or whatever the state law is. How do you overcome that? I don't know that I disagree. I would agree that it's not crystal clear that the state is intending those claims to be certainly brought in a state district court. Yes, yes. It says that specifically. Yeah, that's crystal clear. But the statement that there is no sovereign immunity and they can't raise that defense seems to preclude an 11th Amendment defense. Well, there are different types of sovereign immunity. There's sovereign immunity within the state court, which is waived, but that doesn't resolve whether that claim can be brought in federal court. And the Supreme Court, you have a decent common sense argument, but I don't think that's the way the Supreme Court has addressed it. Fair enough, Your Honor. I will leave it that there is that common sense argument that statutory interpretation in New Mexico, that that's about as close as we're going to get in the legislature. Thank you. Thank you, Your Honor. Mr. Garcia? Your Honors, Mr. Dunn, Mr. Cook. He's way taller than I am. Yes. Taller than anybody. May it please the Court. I think I will start with the 11th Amendment immunity. I think the Court has it right that the abrogation of the sovereign immunity in the Civil Rights Act is limited to state courts by the very face of the Act. Specifically, Section 3B requires it to be in New Mexico District Court. There is no unequivocal waiver. Read the language in 3B. Do you have that there? Give me two seconds, Judge. 3B. A person who claims to have suffered a deprivation of any rights, privileges, or immunities pursuant to the Bill of Rights of the Constitution of New Mexico, due to the acts or omissions of a public body or person acting on behalf, under, of, or within the course and scope of the authority of a public body, may maintain an action to establish liability and recover actual damages and equitable or injunctive relief in any New Mexico District Court. There is no equivocal language saying the same for the Fourth Amendment. In the briefing, I detected an error in Mr. Dunn's argument, and it was this. That if it was brought under the Tort Claims Act and filed in state court, that the court wouldn't do exactly what you're suggesting, Your Honor, which is either send it back on supple—well, there's two ways to look at it. One is on removal. If we remove, we are consenting to the jurisdiction. The court has supplemental jurisdiction over a Tort Claims Act, and I would suggest even under the CRA, if we remove, if the state removed. But the election here was to file into federal court, and because of that, the 11th— The original complaint was filed in federal court. That is correct. because of that, 11th immunity for the state holds. The district court and the judges are arms of the state. I don't want to walk off the civil rights claim just yet because subsection 10 expressly acknowledges and preserves judicial immunity. So even if Mr. Dunn was right, and there was some way to avoid 11th Amendment immunity at the federal court level, we're still going to get a circular argument back to immunity. Well, that's for damages. That would be— So what about the declaratory and injunctive relief? Well, there's no judicial immunity from that, I don't think. I think immunity is read broadly for both damages and injunctive relief. Now, I do think that Judge Strickland was right in the prospective declaratory relief, the claim that's been abandoned. Ultimately, I think if I'm looking at it through your lenses, I say, how do we get this man his process? That's the way. And it was abandoned, so this case is done. How was it abandoned? They asked for a final judgment and given the opportunity to amend it. But they had raised a claim for declaratory injunctive relief against the defendants in their individual capacities. And she said you can't do that. And correctly. Well, they're arguing that was incorrect. So that argument was not abandoned. The argument that they can obtain declaratory injunctive relief against the defendants in their individual capacities. What was missing from Mr. Springer's arguments at every point was any acknowledgement of the 1996 federal court improvement act that amended 1983 to limit injunctive relief. That law changed the reliance on Virginia Supreme Court. It's superseded. Well, superseded in large part. You can initially seek injunctive relief. But the statute, as it's now written, 1983 is now written, does allow declaratory relief. And if there's violation of the declaratory judgment, then you can seek injunctive relief. Am I misreading the statute? No, sir. I think you're reading it exactly right, except for one small color. I think it has to be an official capacity. And why does it have to be an official capacity? I think it's the Lawrence case. I have to go back and dig. An official capacity claim is effectively suing the entity. And that's what was abandoned. And once it's abandoned, that part of it is not before this court. So I think we're limited to the looking back part of it. And the 11th Amendment CRA application on the CRA claim. What about the claim against the clerk in her individual capacity? I think that quasi-judicial immunity is an absolute suit to – it's an absolute bar to suit, not just damages. I think as an extension of the court, she's entitled to the quasi-judicial relief. But 1983 specifically permits declaratory relief against judges. Against judges in their official capacities, which is essentially the entity. Okay, so you can sue the judges. He's distinguishing the clerks. Can you sue the clerks in an individual capacity for declaratory relief? I'm going to have to fire a hypothetical back at you, Judge. And it would be what's missing in the complaint. It would be some kind of statement that the clerk or the CEO were somehow ultraviers beyond what the judge had asked. And I would think in light of the case law, it would have to be excessively and grossly ultraviers. And that's just not in the complaint. Well, Counsel, I'm sorry. Can I get you to go through your decision tree, I guess? What do we do with regard to the claims against the judge? How do we treat those? I think Judge Strickland got it exactly right. The claims for injunctive relief are barred by 1983. The claims for prospective declaratory relief against Chief Judge Murphy, she allowed Mr. Springer to amend the complaint to pursue that track. Now, do I think we had ultimately defenses once that process started?  But that claim against Chief Judge Murphy for the issuance of the orders to give Mr. Springer a process was clearly abandoned. For failure to amend. For failure to amend, and then they asked for a final judgment after that. So I think that one is off the table as a matter of record. He seemed to be suggesting that they were wanting to amend to add complaints, other official capacity complaints, besides the one that she permitted. I can't speak to what Mr. Dunn was thinking. I do know we were on a second amended complaint. That's the operative complaint here. Was there any other claims for prospective declaratory relief? Other than against Judge Murphy, who the district court specifically permitted the amendment against? I think the complaint, the second amended complaint, has enough ambiguity and use of the term defendants, that potentially. But I don't think any of them, and I'll circle back to my ultra vires and grossly outside of whatever the judge asked you to do as a clerk. That's not in the complaint. The complaint is very much we don't like the enforcement of this order. Judge Murphy? Through the clerk and through Mr. Jones, the CEO. Okay. Okay, so not about declaratory, prospective declaratory relief. Correct. That's the way I read it. Okay. And as I am, well, I've got a little bit. I would urge the court to review the 11th Circuit case of Stevens versus Owens. One of the issues that we haven't came up here, we haven't discussed yet, but probably need to, is the difference between control of a courtroom and control of a courthouse. And I think that Stevens v. Osuna provides guidance. I would note for the court that has been cited broadly, I want to say something like 150 times. So it's been pretty well received. And so in the last four minutes, I'm going to come back to what I'm asking for. I'm asking for the court to uphold Judge Strickland's order of dismissal that provides immunity under the injunctive part of 1983 against both of the judges, the Chief Judge and Judge Murdoch. That 11th Amendment immunity bars the CRA claim because it was filed in federal court. There's no, the state's. Is there even an immunity analysis required? I mean, I understand the district court did one, but you just said that, but I don't understand why we would even get there because the claims are only in their individual capacity and they're not permitted for equitable and injunctive relief. Well, the claims against the CRA would be against the district court. Because they can, pursuant to the CRA, they can only be brought against the entity, not the individuals. So the CRA claim would be against the state. And absent any further questions, I'm willing to cede the balance of my time. Thank you, Counsel. Thank you. Case submitted. Counselor excused.